**In the Matter of 1208, INC., Alleged
Bankrupt.
No. 25449.**

United States District Court
E. D. Pennsylvania.
Oct. 19, 1960.

Lewis Tanner Moore, Moore, Light-
foot & Edley, Philadelphia, Pa., for al-
leged bankrupt.

Stanley Schlesinger, Wollman, Tracey,
Schlesinger & Salus, Philadelphia, Pa.,
for receiver and petitioning creditors.

EGAN, District Judge.

The defendant is an incorporated tap-
room that has fallen on evil days finan-
cially. It conducted its business at 1208
North 8th Street, Philadelphia.

On May 8, 1958, an involuntary peti-
tion in bankruptcy was filed against it by
two alleged creditors. The petition re-
cites that the creditors are less than
twelve in number. The petitioning credi-
tors are Ess Kay Enterprises, Inc. for
money loaned in an amount of $1,100, and
Premier Automatic Music Co., in the al-
leged amount of $4,000, representing
liquidated damages for breach of con-
tract. The petition also recites that on
March 18, 1958, while insolvent, the al-
leged bankrupt made a payment of ap-
proximately $12,000 to Time Sales Fi-
nance Corp., a pre-existing creditor,
which amounted to a preference under
Section 60, sub. a of the Bankruptcy
Act.[1] A copy of the creditors' petition
and a subpoena to the alleged bankrupt
were served on the president of the lat-
ter personally on May 14, 1958, accord-
ing to the U. S. Marshal's return.

On May 23, 1958, counsel for the alleg-
ed bankrupt filed an answer admitting
that its creditors were less than twelve in
number; admitting that it had borrowed
$1,100 from Ess Kay Enterprises, Inc.,
and averring that this amount had been
reduced to $991;[2] denying that it was
indebted to Premier Automatic Music
Co. in the sum of $4,000, or any other
amount; and denying that, while insol-
vent, it transferred a portion of its assets
to any creditor, and thus denying in ef-
fect that it had committed an act of bank-
ruptcy. The alleged bankrupt prayed

1. 11 U.S.C.A. § 96, sub. a.

2. Section 4, sub. b of the Bankruptcy Act,
11 U.S.C.A. § 22, sub. b, provides that
a "corporation, * * * owing debts to
the amount of $1,000 or over, may be ad-
judged an involuntary bankrupt * *."

§ 59, sub. b of the Bankruptcy Act, 11
U.S.C.A. § 95, sub. b, provides that if a
person's creditors number less than
twelve, any one creditor whose claim
amounts to $500 or more may petition
to have the debtor adjudged a bankrupt.

that the petition be dismissed and demanded a jury trial.[3]

The case was then listed on the civil jury trial calendar. In the meantime, a receiver was appointed to conserve the assets, the sum of $1,400 being held in escrow.

In due course the case was listed for pre-trial hearing before us on October 3, 1960 and written notice thereof was sent to counsel of record. The pre-trial conference was continued to October 11, 1960, at a time and place indicated, and notice thereof was given to counsel of record.

On October 11th at the time set, counsel for the petitioning creditors appeared, but no one appeared for the alleged bankrupt. Counsel for both sides had previously filed written pre-trial memoranda as required by our standing order of October 23, 1958. At the pre-trial conference, counsel for the petitioning creditors produced a letter from the alleged bankrupt's counsel stating that they had withdrawn from the case and would not appear. However, there is nothing in the record of this case to indicate such withdrawal and no appearance has been substituted by other counsel.

If pre-trial conferences are to be of any benefit in aiding the Court to dispose of its business, they must be treated seriously. Neither counsel nor their clients may be permitted to trifle with the Court and thus string out cases that should be disposed of promptly. In no other way can we clean up our backlog of cases.

In this connection we are reminded of an address given by Chief Justice Warren at the opening session of the American Law Institute entitled "Delay and Congestion in the Federal Courts":

"We must not forget that the role of the Courts is not merely to define the right. It is also to administer the remedy. Unless the remedy is actually applied to persons and things, the right is a mere pious plea.

"With these thoughts in mind, I must report that the delay and choking congestion in the federal courts today have created a crucial problem for constitutional government in the United States. It is so chronically prevalent that it is compromising the quantity and quality of justice available to the individual citizen and, in so doing, it is leaving vulnerable throughout the world the reputation of the United States for protecting and securing these rights and remedies.

\*   \*   \*   \*   \*   \*

"Bankruptcy matters, while usually handled by the referees, are also an important part of federal court business. \* \* \*

\*   \*   \*   \*   \*   \*

"These statistics are a record of delay piled upon delay in the federal courts. But, serious as they may be, they are no accurate measure of the extent to which our administrative weaknesses have caused injustice. They do not reflect the hardship and suffering caused to unfortunate victims of such delays, nor the inadequate settlements which individuals are frequently forced to accept on that account. Neither do these figures include what are probably the worst and most numerous cases of all: those instances in which citizens with causes that cry for justice under law have turned from our court system in despair and have sought ways of working out their problems without resort to the courts at all." 42 Journal of the American Judicature Society 6–9 (1958).

Pursuant to General Order 37 in Bankruptcy (11 U.S.C.A. following section 53) which provides that the Federal Rules of

---

3. Section 19 of the Bankruptcy Act, 11 U.S.C.A. § 42, provides that a person against whom an involuntary petition has been filed shall be entitled to a jury trial on the question of his insolvency.

Civil Procedure shall be followed where they are not inconsistent with the Bankruptcy Act or with the general orders, and Civil Procedure Rule 83, 28 U.S.C.A., which authorizes each district court to make rules governing its practice, this Court faced up to the problem of the imposition of sanctions where counsel are delinquent in pre-trial procedures, by adopting the following standing order on February 8, 1960:

"For failure to appear at a pre-trial conference, or to participate therein, or to prepare therefor, the Court, in its discretion, may make such order with respect to the imposition of fines, costs and counsel fees, as is just and proper; with respect to the continued prosecution of the cause (complaint, cross-claim or counter-claim), a dismissal may be entered, or as to the defense, the preclusion of all or any part thereof, as is likewise just and proper."

The adoption of this standing order was given wide circulation by publication in the Philadelphia Legal Intelligencer, which is the official organ of this Court.

The alleged bankrupt, having asked for a jury trial and having failed to appear or to give any reasonable excuse for not appearing at the pre-trial conference which, under modern practice, is the first step toward a jury trial, has waived same, and the case will be processed as if no such request had been made. The matter will then be proceeded with expeditiously under the Bankruptcy Act.

Accordingly, an order will be entered precluding the alleged bankrupt from having a jury trial on the question of insolvency and referring the petition and answer and the entire cause to a Referee in Bankruptcy, for further proceedings consistent with this opinion and with the Bankruptcy Act and the rules and regulations in such case provided.

Counsel for the petitioning creditors will present an appropriate order.